## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

SIDRA BARKLEY, *Individually and on
behalf of all Others similarly situated,*

     Plaintiff,

                                Case No:

v.

DIVERSIFIED MAINTENANCE
SYSTEMS LLC, a foreign for profit
Corporation,

     Defendant.
_____.

     Plaintiff, SIDRA BARKLEY, individually and on behalf of all other similarly situated persons employed as an Area Manager or Area Janitorial Managers from the period of January 1, 2020, through the date of trial who consent to their inclusion in this collective action herein sues Defendant **DIVERSIFIED MAINTENANCE SYSTEMS** (hereinafter referred to as "DMS" or Defendant), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act (the "FLSA") and states as follows:

### INTRODUCTION

     1.    Plaintiff Sidra Barkley and the class of similarly situated current and former area managers all worked for Defendant away from their homes and out in the field at customer's stores and physical locations throughout the United States.

     2.    As declared on Defendant's website DMS …   "Provides facility

1

maintenance services to over 9,100 client locations nationwide with over 10,000 direct-hire employees and 550+ Field Managers. With 20 offices across the country, our customers include big box and specialty retailers, fitness centers, industrial manufacturing facilities, offices, banks, schools and medical facilities."

3.    The Area Manager's primary function as stated in the company job description on posted job openings on the DMS website is described as follows: "The Area Manager is responsible for the overall coordination and supervision of District and Project managers as well as individual sites. The Area Manager also ensures customer satisfaction through the delivery of quality service, and provides this service in a timely manner within the established budget.

4.    Plaintiff Barkley, and the putative class of similarly situated employees were not compensated for all hours worked over 40 in each and every work week and were unlawfully and intentionally misclassified as exempt employees.

5.    Defendant DMS has improperly and willfully withheld and refused to pay Plaintiff and all AM overtime wages and premiums for overtime hours worked in violation of the nation's federal wage law, the FLSA.

6.    Defendant's employment and payroll records will demonstrably show that Plaintiff, and all AM's were classified as salaried exempt employees with blatant and shocking disregard for the FLSA's salary basis requirement for employers and corporations such as Defendant subject to the FLSA.

2

7.     At minimum, Defendant acted with reckless disregard for its obligations to pay AM's and salaried supervisors overtime premiums for all hours worked, but worse, willfully stole the hard earned and owed wages of many hundreds of its employees in the name of profits and minimizing labor costs.

8.     DMS also concurrently and simultaneously willfully failed to accurately track and record AM's work hours.

9.     Defendant knows that AM who earn less than the requisite salary basis threshold effective January 1, 2020, in the sum of $684.00 per week fail the required salary basis to apply the Executive or Administrative Exemptions.

10.    Defendant knew or should have known that AMs, including Sidra Barkley who are not paid $684.00 per workweek in base salary for their work and services performed cannot be exempt from overtime pay under either the Administrative or Executive Exemptions.

11.    Defendant absolutely knows that its ASM, including Plaintiff Barkley routinely worked overtime hours and the same was both expected and required of them.

12.    Defendant has willfully failed to pay Plaintiff and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiff and similarly situated employees were not paid premium pay (aka overtime wages) for all hours worked in excess of forty (40) hours per week as required under

3

the FLSA.

13.    Plaintiff Barkley, and the class of similarly situated employees did not and currently do not perform work that meets the definition of any applicable exemption under the FLSA other than potentially the 2 exemptions stated herein, namely the Administrative or Executive Exemptions, both of which cannot apply due to DMS's violation of the salary basis threshold.

14.    Thus, Defendant DMS's pay practices are not only unfair, but blatantly unlawful under the FLSA.

15.    The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

**Jurisdiction & Venue**

16.    This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §1331*, because this action involves a federal question pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b)*.

17.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

18.    This Court has personal jurisdiction over the Defendant, because the Defendant maintains its corporate office in Florida, and the damages at issue

occurred within this District where it employed plaintiff and other employees to work.

19.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because a substantial part of the events giving rise to the claims occurred in this District as Plaintiff was hired to work by Defendant in this District, and where Plaintiff resides along with the District in which the unlawful pay practices occurred.

20.     The overtime wage provisions set forth in FLSA §207 apply to Defendant, as DMS engaged in interstate commerce under the definition of the FLSA.   Indeed, at all relevant times, Defendant engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.   Additionally, Defendant earned more than $500,000 in revenue during the years 2020 to 2022 as well.

21.     Evidence reflecting the precise number of overtime hours worked by Plaintiff, as well as the applicable compensation rates, is in the possession of the Defendant.

22.      Some of these records indicate work performed by the Plaintiff in excess of 40 hours in a workweek without any overtime pay.

23.     However, since Defendant did not accurately and completely track and record all the work hours of Plaintiff and all AM, Defendant's time records would be inaccurate and unreliable as to the full and total work hours of Plaintiff and all

other similarly situated AMs.  Thus, Plaintiff may establish the hours she worked solely by her testimony, and the burden of overcoming such testimony shifts to the employer to prove the precise number of hours she worked.   See *Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).*

### Representative Plaintiff, Sidra Barkley

24.     Barkley resides at 3076 GLADYS CIRCLE, MIRIANNA, FL 32446. She was first hired to work for Defendant as an Area Manager in September 2019.

25.     Barkley separated from her employment with DMS on or about March 1, 2022.

26.     Barkley was hired from the Corporate office, and assigned the territory of Region 3, Panama City, Ft Walton, and Tallahassee Fl.

27.     Plaintiff, like all other AMs, was required to be out in the field and travel to the stores and locations assigned to be cleaned and supervise a cleaning crew of hourly paid employees.

28.     If a cleaning crew member exceeded over 40 hours per week, Plaintiff was instructed by the company to edit off the overtime hours, or such hours were required to be reassigned to her.

29.     Plaintiff also had to routinely herself perform cleaning work like the janitors or cleaners she supervised on a weekly basis and may be classified as a working supervisor.

30.     Plaintiff was offered the position of Area Manager with a stated base rate of pay of $15.86 per hour for this position, which equates to a weekly salary of $634.40 per week, below the minimum salary threshold for the executive and administrative exemptions.

31.     Plaintiff was also provided with an automobile allowance meant to reimburse her for gas, mileage, and other automobile expenses in lieu of the Defendant providing a company car.  This allowance was not meant to be tied to or related to compensation for the work and services performed.

32.     Plaintiff was required to work up to 7 days a week and routinely more than 40 hours per week without ever being paid a premium for these overtime hours Defendant knew she was working.

### The Defendant

33.     DIVERSIFIED MAINTENANCE SYSTEMS LLC is a for profit Delaware company with principal place of business and corporate office located at 5110 Sunforest Dr. Suite, 250 Tampa, FL 33634.  Defendant may be served through its designated registered agent: INCORP SERVICES, INC., 17888 67TH COURT NORTH LOXAHATCHEE, FL 33470, or at its corporate office in Tampa, Florida.

34.     Defendant operates from 21 offices located in 12 states including: Alabama, Arizona, Georgia, Louisiana, Indiana, Illinois, Mississippi, Maryland, North Carolina, Pennsylvania, South Carolina and Texas.

35.     Upon information and belief, DMS employs approximately 5000 employees working at or reporting to these 21 offices, including approximately 500 or more AM's working at any given time.

36.     Defendant DMS is an employer within the definition of the FLSA, as it has revenues exceeding $500,000 annually in all applicable time periods, is involved in interstate commerce, and employs upwards of 1000 or more employees across the U.S.

37.     Given turnover, Plaintiff estimates that the putative class of similarly situated inside sales representatives to be in the range of 750 persons who worked as AM's within the relevant class period of January 1, 2020, to the present.

38.     DMS was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d).

**General Collective Action Allegations**

39.     This collective action arises from an ongoing and unlawful scheme by Defendant to willfully underpay and refuse to pay overtime wages to a large class of workers, the Area Managers, who Defendant knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid for all hours worked.

40.     Defendant's unlawful pay practice applicable to all Area Managers

8

relates to its willful misclassifying them as exempt employees in violation of the FLSA, and then making Plaintiff Barkley and all others similarly situated, suffer to work overtime hours without being paid a premium for all overtime hours worked, and without being paid a fair wage for a day's work.

41.     When considering the hours Plaintiff worked on a weekly basis, upwards of 70 in a week, she has earned less than the requisite minimum wage for 2021 and 2022, which was increased to $10.00 per hour.

42.     DMS ran this overtime wage scheme for pure greed and to save many millions of dollars in labor costs and decrease expenses, all to the detriment of its AM's, who slaved away working long, laborious hours, including many overtime hours each week, without being paid for their hard work.

43.     Defendant no doubt made a calculated, willful decision to refuse to pay overtime wages to AM's, assuming the risk that even if an employee eventually made a claim for overtime wages, they would have benefited financially from not paying overtime premiums and lower salaries to a large number of its employees, and pocketed millions of dollars each year in saved labor costs.

44.     As is often stated by Courts in similar FLSA overtime wage cases over the last 70 years, this is the classic case of willful misclassification and a SCHEME of an employer to avoid its overtime pay obligations under the FLSA.

45.     Here, Barkley and all other similarly situated AMs were not being paid

a fair wage for a fair day's work as the FLSA mandates and for which it was created.

46.     Despite being a nationally recognized corporation, with employees throughout the United States of America, Defendant has blatantly, and willfully violated the FLSA by misclassifying AMs as exempt when they knew or should have known do not meet the salary basis threshold for the executive and administrative exemptions.

47.     The FLSA does not require employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendant knows, or should know, that employees are working overtime hours.

48.     Here, Defendant has maintained for many years the application of this unlawful pay practice and a history of either disinformation or intentional silence to its employees about the FLSA overtime pay requirements.

49.     Upon information and belief, many AM working for Defendant throughout the U.S. have been paid less than the requisite salary basis and are thus willfully misclassified as exempt from overtime wages.

50.     Plaintiff, like her fellow AMs, assumed her employer was complying with the FLSA and federal or state wage laws, and did not seek to challenge their classification as exempt from overtime.

51.     Throughout Plaintiff's term of employment, she routinely worked more

than 40 hours in the workweek, and as much as 7 days in a week and never paid a premium for all the overtime hours worked.

52.     Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

53.     Plaintiff routinely worked more than 40 hours in his workweeks, with the knowledge, encouragement, and behest of Defendant, but was never paid a premium for all such overtime hours worked.

54.      Defendant manipulated, edited and altered time records of the Plaintiff and other AM.

55.     Plaintiff was asked to telephone into a toll-free number with her employee ID the time she got to a store to work, but meanwhile was told not to clock out.

56.     Further, all the work Plaintiff was required to do away from the store and from home were never tracked or clocked, including phone calls, emails and text messages to and from superiors and subordinate employees.

57.     Plaintiff, like all other AM, was on call literally 24/7 having to deal with and handle employee issues, call outs, and scheduling and be on call for her superiors likewise, 7 days a week 24/7.

## THE PUTATIVE CLASS

58.     Plaintiff brings this suit individually, and on behalf of all similarly

situated persons composed of the following Class or collective similarly situated members:

## PROPOSED PUTATIVE CLASS:

**All persons who were employed with Diversified Maintenance Systems LLC as salaried Area Managers, Janitorial Managers, Area Supervisors or other persons performing similar job requirements and who were paid less than $684.00 in base salary per week for the period of January 1, 2020, to the date of trial working anywhere in the United States.**

## COLLECTIVE FACT ALLEGATIONS

59.    At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

60.    Plaintiff is able to protect and represent the Collective or putative Class or classes, and is willing and able, and consents to doing so.

61.    Plaintiff is a proper Class representative of all those similarly situated as she was employed by Defendant under the title of Area Manager (AM), during her employment, and because:   a) she was paid under the same common pay structure/plan applicable to all other Area Managers:  a base salary and treated as an exempt employee under the FLSA; b) she routinely worked overtime without being paid a premium for the hours worked; and c) is familiar with Defendant's policies, procedures and unlawful pay practices.

62.    Upon information and belief, Defendant employed 500 or more AM at

12

any given time working from their homes or hired from and reporting to 21 respective offices throughout the United States, and whose work was controlled from these 21 offices and ultimately from the Corporate office or headquarters located in Tampa, Florida.

63.     Upon information and belief, during the relevant class period of January 1, 2020, to the present, many of the AM were subject to a common unlawful pay practice and scheme of being willfully misclassified as exempt employees and not paid premiums for all overtime hours worked when they should have because their salary did not meet the threshold salary basis for the executive or administrative exemptions, and no other exemptions apply to the AM position.

64.     Defendant's job offer letters to AM also demonstrate a common pay plan for inside sales reps: a base hourly pay, plus some amount of money for automobile allowance in lieu of reimbursement for gas, mileage and other automobile costs and expenses.

65.     Defendant did not generally additionally pay AM mileage or pay for gas, or any automobile expenses incurred by Plaintiff.

66.     All Area Managers and other Supervisors within this class described herein are now, and at all times within the preceding 3 years of the filing of this complaint were treated as exempt employees and who were assigned to work mandatory overtime hours on a routine basis.

67.     The Defendant maintained a company-wide policy throughout the relevant class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for AMs despite clear knowledge that the salary paid fell below the minimum threshold for application of the Executive or Administrative exemptions under the FLSA.

68.     Upon information and belief, a majority of the AM working for Defendant throughout 2020 to the present are not paid a salary above the minimum threshold amount for the administrative and executive exemptions, set at $1,368.00 biweekly.

69.     The job requirements of the AM are similar if not identical for all AM working throughout the U.S. and expected to be performed in similar manners.

### COUNT I
### FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

70.     Plaintiff alleges and incorporates by reference all preceding paragraphs 1 through 69 of this Complaint and fully restates and realleges all facts and claims herein.

71.     Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all Area Managers and other salaried exempt supervisors and managers

who are paid less than FLSA requisite minimum salary on a bi-weekly basis of $1,368.00.

72.     Plaintiff and the proposed class of similarly situated, comprised of all current and former persons who worked for DMS as Area Managers, Area Supervisors and other salaried managers or supervisors paid less than $1368.00 in salary on a biweekly schedule, were denied overtime compensation pursuant to FLSA §207 as required to be paid by Defendant for all hours worked over 40 in each and every work week.

73.     Plaintiff and all those similarly situated are employees of Defendant during their time as contemplated by 29 U.S.C. § 203.

74.     Defendant does not and cannot have a good faith basis for failing to pay Plaintiff and the class of similarly situated overtime premiums where it is a very clear and well-known requirement of the FLSA that the minimum biweekly salary for the executive and administrative exemptions is $1368.00.

75.     No other exemption applies to the AM position and all other similar or related positions, or other job titles used to describe a person's performance similar job requirements.

76.     The payment of an automobile allowance cannot be used to satisfy the FLSA's minimum salary requirement for appreciation of the executive and administrative exemptions.

77.     The car allowance is not meant to compensate the employee for their work and services; it's meant to reimburse for costs and expenses incurred for the employee having to use his or her own vehicle for work purposes and in lieu of the employer paying mileage, gas and other expenses on an ad hoc process.

78.     DMS also knew AM were working overtime, encouraged it and with blatant disregard for the FLSA, chose not to pay them premiums for overtime hours worked when they knew their salaries fell below the minimum threshold under the FLSA.

79.     Defendant's overtime pay practice and policy here was lacking in good faith compliance with the FLSA as the DOL regulations and the FLSA are clear as to the minimum salary basis, and to which DMS disregarded.

80.     Plaintiff, and the class of similarly situated, are thus owed a premium pay or wage for all hours worked over 40 over the terms of their employment to the date of trial.

81.     Plaintiff and the class of similarly situated are also due and owing an equal sum in overtime wages awarded in this action as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

82.     Defendant knowingly and willfully failed to accurately and fully track the hours worked by Plaintiff and the class of similarly situated employees in violation of the FLSA and 29 CFR Part 576.

16

83.    Defendant encouraged AM to work as many hours as they could to meet or exceed goals and expectations and handle all their job requirements, even working 7 days in a week.

84.    Defendant has failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq.*, including 29 USC Sec. 211(c) and 215 (a).

85.    To summarize, DMS has willfully and lacking in good faith, violated the FLSA by failing to pay overtime premiums to Barkley and all others similarly situated since January 1, 2020, to the present.

86.    As a result of Defendant's willful violation of the FLSA, Plaintiff and the proposed putative class of similarly situated have suffered economic damages by their willful failure to pay overtime compensation in accordance with FLSA §207 and their created and maintained unlawful pay practices.

87.    Due to DMS' willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

88.    As a result of DMS's unlawful acts and pay practices, complained of herein, Plaintiff and all other similarly situated present and former employees working as Area Managers and other supervisors and managers under various job titles who were paid less  than the requisite minimum salary threshold, have been

17

deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated past and present salaried Area Managers and Supervisors who worked for Defendant during the period of January 1, 2020, to the present, seek the following relief:

a.   Designation of this action as a collective action.;

b.   That Plaintiff be authorized to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present inside sales representatives employed by DMS at any time during the period of January 1, 2020, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.   Designate the Named Plaintiff as Representatives of the Collective or Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding;

d.   That all past and present Area Managers and Supervisors who fit within the class definition be informed of the nature of this collective action, and the similarly situated employee's right to join this lawsuit;

e.   That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA;

18

f.      That the Court find and declare Defendant's violations of the FLSA were and are willful;

g.      That the Court enjoin Defendant, Pursuant to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class;

h.      That the Court award to Plaintiff and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation and premiums for all hours worked over 40 in each and every workweek for previous hours worked in excess of forty (40) for any given week AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.      That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.      That the Court award Plaintiff a Class Representative service fee award for the justice they sought out for so many and their services in this case as representatives for the putative class and to their counsel;

k.      That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.      That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Signed and submitted March 23, 2022.

19

*/s/Mitchell Feldman, Esq.*
Feldman Legal Group
FL Bar#: 0080349
**6916 W. Linebaugh Ave #101**
Tampa, Fl 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff and the class of*
*Similarly situated.*

20